MASSACHUSETTS EMPLOYERS INSURANCE EXCHANGE &
others[1] *vs.* PROPAC-MASS, INC.

Suffolk. January 12, 1995. - April 11, 1995.

Present: LIACOS, C.J.,.WILKINS, NOLAN, & GREANEY, JJ.

*Insurance,* Reciprocal insurance exchange. *Consumer Protection Act,* Unfair act or practice. *Contract,* Implied covenant of good faith and fair dealing. *Practice, Civil,* Parties, Standing.

In an action for breach of an implied covenant of good faith and fair dealing and for violation of G. L. c. 93A, §§ 2 and 11, the judge was warranted in concluding that the defendant's unilateral self-serving conduct during the course of a contract dispute was not fair dealing in good faith and constituted an unfair act or practice under G. L. c. 93A. [42-43]

In a civil action, representative members of an unincorporated association were properly named as plaintiffs for the members as a class pursuant to Mass. R. Civ. P. 23.2, and the judge correctly ruled that the plaintiffs could fairly and adequately prosecute the action on behalf of the association. [43-44]

CIVIL ACTION commenced in the Superior Court Department on August 23, 1993.

The case was heard by *David M. Roseman,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Edward B. Deutsch,* of New Jersey (*Raymond J. Kenney, Jr.,* with him) for the defendant.

*Mitchell Kaplan* (*Michael R. Reinemann* with him) for the plaintiffs.

---

[1]Associated Industries of Massachusetts, Inc.; ATCO Plastics, Inc.; and Humboldt Storage & Moving Co., as representative members of the Massachusetts Employers Insurance Exchange.

WILKINS, J. The principal issue in this case is whether the plaintiff, an unincorporated domestic reciprocal insurance exchange (Exchange), created pursuant to G. L. c. 175, §§ 94A-94M (1992 ed.), lawfully terminated its attorney-in-fact agreement (agreement) with the defendant (Propac). Under the agreement, Propac agreed to perform certain management service functions in providing workers' compensation insurance to members of the Exchange. The Exchange was established under the auspices of the plaintiff Associated Industries of Massachusetts, Inc. A Superior Court judge ruled that the Exchange had lawfully terminated the agreement and that Propac had violated (a) the agreement's implied covenant of good faith and fair dealing and (b) G. L. c. 93A, §§ 2 & 11 (1992 ed.). He also granted injunctive relief. We allowed Propac's application for direct appellate review and now affirm the judgment.

The termination issue can be answered by deciding straight-forward questions of law without the need to understand the detail of the functions of a reciprocal insurance exchange[2] or the role of an attorney-in-fact[3] in the exchange of contracts of insurance of subscribers[4] of an exchange. The attorney-in-fact agreement between the Exchange and Propac provided that, unless terminated for cause, it would be effective for a five-year term from the first day of the month in which the Exchange commenced operations (which was January 1, 1989) "unless terminated by either party on

---

[2] An "[e]xchange" is defined in G. L. c. 175, § 94A (1992 ed.), as follows: "an aggregation of individuals, partnerships or corporations, herein called subscribers, who or which, under a common name, exchange contracts of insurance on the reciprocal or inter-insurance plan through the office of an attorney in fact, being the place where contracts of insurance are issued."

[3] An "attorney in fact" is defined in G. L. c. 175, § 94A, as "an individual, partnership or corporation acting under power of attorney as the representative of the subscribers in the exchange of reciprocal or inter-insurance contracts and matters incident thereto."

[4] "Subscribers" are defined in G. L. c. 175, § 94A, as "the participants or policyholders, who have given to an attorney in fact a power of attorney giving authority to obligate them separately and severally, as specified therein, in the exchange of reciprocal or inter-insurance contracts."

the fifth year, by one year's prior written notice" (or annually thereafter on one year's written notice).

The Exchange had a board of advisors or advisory committee, as required by G. L. c. 175, § 94K (1992 ed.). By letter dated December 4, 1992, the advisory committee informed Propac that it was "terminating the Agreement on the completion of the five year term, ending December 31, 1993."[5] The Exchange's bylaws provide that "[t]he business and affairs of the Exchange, subject to the contract with the Attorney-In-Fact, shall be under the advice and direction of the Board of Advisors." Propac argues that the agreement could only be terminated by a "party" and that the Exchange, not its advisory committee, was the only other party that had the power to terminate the agreement.

The Exchange, an unincorporated association of hundreds of individual subscribers, as a party to the agreement, had to act through some person or persons in exercising its right. By agreement of the subscribers, the Exchange's by-laws placed the direction of the business of the Exchange in the hands of its board of advisors.[6] If the board of advisors did not have authority to act for the Exchange to terminate the agreement without cause, the termination provision would have no effective purpose for the Exchange. As the judge in effect noted, one is unlikely to attribute to the parties an intention to accept a contract provision that has no practical effect. It is

---

[5]General Laws c. 175, § 94K (1992 ed.), directs that the manner of election or appointment of an exchange's advisory or similar committee and the committee's authority and duties are those provided in the power of attorney. The attorney-in-fact agreement in this case contained no such provision. The Exchange's members placed such provisions in the Exchange's bylaws. Propac has no basis for relying on this omission, which was known to the then Commissioner of Insurance when he approved the Exchange. The commissioner had a copy of the bylaws at the time of that approval.

[6]We are deeply unimpressed with Propac's various arguments, which we shall not detail, based on (a) the use in various places in this agreement of the different words "Advisory Committee" (i.e., board of advisors), "Exchange," or "parties," and (b) changes made during the drafting of the attorney-in-fact agreement.

hardly a surprise that we rule that an organization may act through its designated representatives.

The judge ruled that Propac had violated both G. L. c. 93A, § 11 (1992 ed.), and the agreement's implied covenant of good faith and fair dealing. See *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 471-472, 474 (1991). He found that following notice of termination Propac had refused and continued to refuse "to cooperate with the Exchange in an orderly transition to a new attorney-in-fact. Rather, Propac engages in a campaign to retain office in breach of a covenant, fairly read, that permits the Exchange, without cause, to terminate it." The agreement provided that, on notice of termination, Propac "will cooperate with the Exchange toward the end that there will be an orderly transfer of management service functions, in respect to the Exchange's business, from [Propac] to the Exchange or its designee." The judge was fully warranted in concluding that Propac violated that provision.

The judge found that, while it was challenging the Exchange's authority to terminate the agreement, Propac removed files to another location without notice to the Exchange; informed the Exchange on November 15, 1993, that it was vacating the Exchange's principal office; told subscribers that their workers' compensation insurance would be jeopardized if they signed a new power of attorney appointing a different attorney-in-fact; instructed subscribers to pay premiums to it instead of to the Exchange; and conducted a campaign to solicit subscribers for its own account.

Propac argues that it relied in good faith on its construction of the agreement and that its breach of contract cannot alone be an unfair act or practice under G. L. c. 93A, § 2. We view as uninstructive phrases such as "level of rascality" (*Levings* v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 [1979]) and "rancid flavor of unfairness" (*Atkinson* v. *Rosenthal*, 33 Mass. App. Ct. 219, 226 [1992]), in deciding questions of unfairness under G. L. c. 93A. We focus on the nature of challenged conduct and on the purpose and effect of that conduct as the crucial factors in making a G. L.

c. 93A fairness determination. See *PMP Assocs., Inc.* v. *Globe Newspaper Co.,* 366 Mass. 593, 596 (1975). Propac proceeded to act as if it were to be an effective authorized attorney-in-fact after the end of the five-year term of the agreement without the approval of, or even consultation with, the State regulatory authority. While it is correct that a breach of contract alone does not amount to an unfair act or practice under G. L. c. 93A, § 2 (see *Whitinsville Plaza, Inc.* v. *Kotseas,* 378 Mass. 85, 100-101 [1979]), conduct undertaken as leverage to destroy the rights of another party to the agreement while the agreement is still in effect and jeopardizing the interests of subscribers in preserving their workers' compensation coverage has a coercive quality that, with the other facts, warranted a finding of unfair acts or practices.

Moreover, unilateral, self-serving conduct, as found by the judge, during the course of a dispute as to Propac's right to continue as attorney-in-fact was not fair dealing in good faith. This is particularly so because Propac's assertion that the attorney-in-fact agreement had not been terminated had no substantive merit. Propac points to no evidence that it proceeded on the advice of counsel. Moreover, by its conduct, Propac created unnecessary uncertainty among the Exchange's subscribers concerning their workers' compensation coverage.

The judge was warranted in ruling that Propac's conduct constituted an unfair act or practice under G. L. c. 93A and a breach of the implied covenant of good faith and fair dealing. We have said that a breach of the implied covenant of good faith and fair dealing may constitute an unfair or deceptive act or practice for the purposes of G. L. c. 93A. That is true on the facts found by the judge. *Anthony's Pier Four, Inc.* v. *HBC Assocs., supra* at 476.

Propac's argument that the named plaintiffs had no right to prosecute this action on behalf of all the Exchange's subscribers lacks merit. Rule 23.2 of the Massachusetts Rules of Civil Procedure, 365 Mass. 769 (1974), permits an action to be maintained by "members of an unincorporated association as a class by naming certain members as representative par-

ties . . . if it appears that the representative parties will fairly and adequately protect the interests of the association and its members." The judge found that the individual plaintiff companies were long-standing members of the Exchange and shared the interest that control of the Exchange remain with the subscribers through the board of advisors. He did not abuse his discretion in ruling that the representative members could prosecute this action on behalf of the Exchange and its subscribers. See *Cheever* v. *Graves*, 32 Mass. App. Ct. 601, 604-605 (1992).

*Judgment affirmed.*