Henry, Bruce R., J.
This matter came on for trial before a jury with the parties asserting claims and cross claims for breach of contract, unjust enrichment, and violations of G.L.c. 93A. The claims of violations of c. 93A were submitted to the jury in the form of three questions. From the outset of the trial, I indicated to the parties that the answers to those questions would be advisory only and that I would make my own determination whether to adopt the jury’s findings with regard to those issues covered by the questions. I allowed the motion of the individual defendant Máximos Hatziiliades for a directed verdict on the breach of contract and unjust enrichment claims, but permitted the c. 93A claims against him individually to be submitted to the jury. After trial, the jury found that Water & Fire LLC had breached the contract it had with the plaintiff and had breached the covenant of good faith and fair dealing and awarded the damages which had been sought, $147,872.00.
In addition, the jury answered the advisory questions on the c. 93A claims finding that both defendants had committed unfair and deceptive acts or practices, but finding that Mr. Hatziiliades’ acts or practices did not cause injury or damage to the plaintiff. Water & Fire, LLC was found to have committed unfair or deceptive acts or practices which did cause injury or damages to the plaintiff and to have done so willfully or knowingly.
The jury found that the plaintiff had not committed any unfair or deceptive act or practice.
For the reasons which follow, I accept and adopt the jury’s finding that the plaintiff did not commit an unfair or deceptive act or practice; however, I disagree with the jury’s conclusions regarding the defendants’ commission of an unfair or deceptive act or practice and decline to find a violation of c. 93A.
Findings of Fact
In January 1999, Clay Chevrolet, Inc., as Lessor, and Savvas Hatziiliades and Max Hatziiliades D/B/A Western Roofing Construction Co., Inc., as Lessees, entered into a lease of premises at 38 Crafts Street in Newton, Massachusetts. In May 1999, that lease was amended pursuant to an agreement that in return for work to be done on the premises by Western Roofing Construction Co., Inc. the rent due would begin in October of that year and the option period would be increased to three years. The parties operated under that agreement into 2002.
In 2002, the parties began negotiations on an extension of the lease. Ultimately, as of October 2,2002, a new agreement was reached between Clay Chevrolet, Inc. and Water & Fire LLC. Although captioned as a lease extension, the agreement is a new contract with new parties. David Clay signed on behalf of Clay Chevrolet, Inc. and Max Hatziiliades signed as “Principal/ Owner” of Water & Fire. New rent figures were set through the end of 2009 and Water & Fire agreed to perform certain renovations to the premises, which were spelled out in the agreement.
The parties operated under that agreement without any apparent difficulty through 2004. At the beginning of 2005, there was some further discussion between Mr. Hatziiliades and Mr. Clay concerning the rent due under the agreement. It appears that Hatziiliades’ use of the premises had changed from retail to warehouse and that he wished to renegotiate the lease. He testified at trial that he had learned that the retail use was not permitted under the Cily of Newton’s zoning laws. Apart from his own testimony, Hatziiliades did not offer other evidence of that prohibition. Hatziiliades sought to have the rent adjusted and Clay agreed to have an appraisal done at Hatziiliades’ expense. Ongoing correspondence did not lead to an alteration of the lease agreement and Water & Fire vacated the premises in June 2005, and paid only $2698.23 to Clay Chevrolet for 2005. Ultimately, Clay Chevrolet sold the premises in March 2006.
I found credible the evidence that in 2005 Mr. Hatziiliades believed that there were now changed circumstances, whether because of a change in his *36 own usage of the building or because of the City’s zoning, which merited a re-examination of the lease. I find that Hatziiliades acted in good faith in seeking a revision of the lease and I also find that Clay Chevrolet, Inc. acted in good faith in agreeing to revisit the issue and in ultimately denying the lease revision sought.
Discussion
Massachusetts General Laws, Chapter 93A, §2(a) makes unlawful “unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.” Section 11 creates a private cause of action for violations of §2(a) where both the plaintiff and the defendant are engaged in the conduct of trade or commerce. As a general rule, the standard for finding a 93A violation is higher in the business-to-business context than in the consumer-to-business context. See Spence v. Boston Edison Co., 390 Mass. 604, 616 (1983) (“One can easily imagine cases where an act might be unfair if practiced upon a commercial innocent yet would be common practice between two people engaged in business”). “Courts have deliberately avoided setting down a clear definition of conduct constituting a violation of G.L.c. 93A.” Id. at 616. “It has been held, generally, that for conduct to violate the standard of §2(a), (1) it must fall within at least the penumbra of some common-law, statutory, or other established concept of fairness, (2) it must be unethical or unscrupulous, and (3) it must cause substantial injury to a consumer or another businessman.” Wasserman v. Agnastopoulos, 22 Mass.App.Ct. 672, 679 (1986), quoting PMP Associates, Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975). The focus for determining unfairness is “on the nature of the challenged conduct and on the purpose and effect of that conduct.” Massachusetts Employers Ins. Exchange v. Propac Mass. Inc., 420 Mass. 39, 43 (1995).
“Conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes.” Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 474 (1991). Accordingly, “conduct undertaken as leverage to destroy the rights of another party to the agreement,” particularly “unilateral, self-serving conduct during the course of a dispute,” based on a position lacking “substantive merit,” has been found to violate c. 93A. See Massachusetts Employers Ins. Exchange v. Propac Mass. Inc., 420 Mass. at 43. However, “a mere breach of contract, without more, does not amount to a c. 93A violation.” Madan v. Royal Indemnity Co., 26 Mass.App.Ct. 756, 762 (1989), citing Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100-01 (1979). Even a breach accompanied by “sham justifications” has been held not to violate c. 93A, where the conduct lacks an “extortionate quality” arising from use of the breach “as a lever to obtain advantage for the party committing the breach in relation to the other party.” Atkinson v. Rosenthal, 33 Mass.App.Ct. 219, 226-27 (1992).
Here, Water & Fire sought to revisit the rents called for under the contract. It did so, however, not as a pretext to extract a benefit it knew they were not entitled to, but in the good faith belief that its positions were correct. Compare Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. at 474 (“knowing use of pretext”). I note that Clay Chevrolet was not so convinced of the rightness of its position that it would not consider the issue; it retained an appraiser to review the property and to provide an updated assessment of reasonable rents in the area for similar properly.
Although I have great respect for the jury and its deliberations in this matter, I disagree with its determinations finding unfair or deceptive acts or practices and a breach of the covenant of good faith and fair dealing. See Kattar v. Demoulas, 433 Mass. 1, 12 (2000) (judge deciding c. 93A claim may make findings of fact that are contraxy to those made by jury on parallel common-law claims). I find that neither Water & Fire, LLC nor Máximos Hatziiliades committed unfair or deceptive acts or practices or that they did so willfully or knowingly. The plaintiffs request for multiple damages and an award of attorneys fees is, therefore, DENIED.
ORDER
For the foregoing reasons, judgment shall enter for the plaintiff on its breach of contract claim in the amount of $147,872.00 plus statutory interest and costs. Judgment shall enter for the defendant on the remaining claims of the plaintiff. Judgment shall enter in favor of the plaintiff on the counterclaims of the defendants.