Henry, Bruce R., J.
This matter is before the Court for a trial without a jury of the plaintiffs’ claim of a violation of G.L.c. 93A in the defendant’s refusal to refund the price paid by the plaintiffs for a cruise which they declined to take in the aftermath of the terrorist attacks of September 11, 2001. In their complaint the plaintiffs had also sought a refund under a breach of contract theory. The defendant, Norwegian Cruise Line, Ltd. (Norwegian) has agreed to provide the plaintiffs with a refund of the purchase price of the cruise tickets, plus interest; hence I will not address that contractual claim.
Prior Proceedings
The Casavants commenced this litigation on October 3, 20Ó2. In addition to an answer and counterclaims, Norwegian filed a motion to dismiss the complaint based on the forum selection clause contained in the ticketing contract. That clause required that litigation be commenced in Florida. The motion to dismiss was supported by an affidavit of a Norwegian manager. Before the plaintiffs’ opposition was received, another judge of this Court allowed the motion to dismiss and, later, denied the plaintiffs’ motion for reconsideration. The plaintiffs appealed the dismissal. Finding both procedural and substantive errors, the Appeals Court reversed the judgment in favor of Norwegian. Casavant v. Norwegian Cruise Line, Ltd., 63 Mass.App.Ct. 785 (2005).
The Appeals Court found that the forum selection clause was unenforceable “where the course of conduct of Norwegian was unreasonable and unjust. . . the ticket purchasers took no affirmative action to accept the contract, but rather expressly rejected the services offered in the contract ... In these circumstances, as there was not, under Federal maritime law, the allowance of an opportunity for the Casavants to reject the ticketing contract ‘with impunity,’ nor, under State contract law, did the Casavants’ actions give rise to an accepted contract, we conclude that the forum selection clause is unenforceable.” Id. at 799.
Findings of Fact
Based on the evidence submitted by the parties at trial, I make the following findings of fact.
On or about October 25, 2000, the Casavants booked reservations for a Norwegian cruise to Bermuda, scheduled to depart on September 16, 2001 from Boston. They paid a deposit of $628.00 at the time of booking. They received a “Passenger Invoice and Confirmation” (Exhibit 1), which included a section headed “Cancellation Fees.” That section indicated that cancellation 0-14 days before departure would mean a 100% cancellation fee. Mr. Casavant indicated at trial that he was aware of that information. As part of the materials they also received a “Travel Information and Service Agreement” sheet which warned of the possibility of cancellation fees. That sheet also recommended that travelers purchase trip insurance to protect against cancellation fees “in the event of a medical emergency.” On or about June 27, 2001, the Casavants received a “Payment Reminder” (Exhibit 2), which included the same information regarding Norwegian’s cancellation fees. On or about July 10, 2001, the Casavants paid the full balance of the ticket price, $2,017.50 for the two tickets. They also purchased trip insurance costing $118.00. They received another “Passenger Invoice and Confirmation” form (Exhibit 4) dated July 12, 2001, which again included the information regarding Norwegian’s cancellation fees.
On or about August 27, 2001, Norwegian issued two passenger tickets and a Passenger Ticket Contract consisting of twenty-eight numbered paragraphs of terms on a form integrated with the tickets. The Casavants received those materials around September 1, 2001. The Casavants did not communicate their acceptance of the contract terms to Norwegian and the Appeals Court found that the Casavants had not accepted the ticket as a binding contract under either federal maritime law or Massachusetts contractual law.
On September 11, 2001, terrorist attacks occurred in New York City, Washington, D.C., and Pennsylvania.
In the aftermath of those attacks, the Casavants were fearful of going on the cruise which was scheduled to depart from Boston Harbor. On September 11, 2001, Mark Casavant spoke to a Norwegian representative about not wanting to go on the cruise and about desiring to reschedule or obtain a refund, and was told he should not simply not show up for the cruise but should cancel it, and that after the sailing date something could be worked out. Mr. Casavant had a second *556 conversation with a Norwegian representative, a day or two after the first conversation, in which the same advice was given to him and in which the representative indicated that they would not put that advice in writing. The representative indicated that if the Casavants wanted any consideration of their request to reschedule or obtain a refund, they would have to cancel the trip. In another conversation, a male representative of Norwegian indicated that they would not be able to reschedule and they would have to deal with the requests after the boat left.
The Casavants sent a letter dated September 17, 2001 (Exhibit 7), to Norwegian setting forth their request to reschedule the cruise. In response, the Casavants received a letter dated October 11, 2001 (Exhibit 8), from Norwegian indicating that Norwegian was “sorry to learn that you elected to cancel you scheduled voyage . ..” and that it was unable to honor their request for a refund or a credit of the price paid. The letter also indicated that Norwegian recommended that passengers obtain trip insurance through BerkleyCare, Ltd. Although the Casavants had done so, their request for coverage or indemnification of the purchase price was denied by that insurer. The Casavants continued their efforts to obtain a refund or to reschedule the trip, to no avail.
The Casavants retained Attorney John Deacon to represent them in their effort to obtain a refund. On August 22, 2002, Attorney Deacon sent a demand letter (Exhibit 9) in accordance with G.L.c. 93A, setting forth the Casavants’ demand and the bases for it. The demand letter raised five bases for the claim of unfair or deceptive acts or practices: 1) the plaintiffs never accepted the contract, 2) there was no consideration because Norwegian’s fare was fully earned before the sailing, 3) the plaintiffs had the right to use their tickets for another cruise for any reason, 4) Norwegian failed to file its fare with the appropriate Massachusetts agency, and 5) the ticket contract’s limitation of liability for personal injury or death was illegal. Subsequently, in June of 2006, the plaintiffs asserted another basis for their claim of a c. 93A violation: that Norwegian violated 940 CMR § 15.01 et seq. by deceiving them with regard to the cancellation policy within the passenger ticket contract.
By letter dated September 26, 2002 (Exhibit 10), Norwegian responded to the 93A demand letter, but made no offer of settlement. In that response, Norwegian indicated that its policy was to provide passengers with a 100% refund if they had an objection to a provision in the Passenger Ticket Contract. That policy was not made known to the plaintiffs before the letter of September 26, 2002. The Casavants did not object to any provision of the Passenger Ticket Contract— they simply did not want to take the cruise when it was scheduled. Mr. Casavant indicated that there was nothing which would have induced them to sail at that time.
Applicable Law
Massachusetts General Laws, Chapter 93A, §2(a) makes unlawful “unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.” “Courts have deliberately avoided setting down a clear definition of conduct constituting a violation of G.L.c. 93A.” Spence v. Boston Edison Co., 390 Mass. 604, 616 (1983). “Ithasbeen held generally, that for conduct to violate the standard of §2(a), (1) it must fall within at least the penumbra of some common-law, statutory, or other established concept of fairness, (2) it must be unethical or unscrupulous, and (3) it must cause substantial injury to a consumer or another businessman.” Wasserman v. Agnastopoulos, 22 Mass.App.Ct. 672, 679 (1986), quoting PMP Associates, Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975). The focus for determining unfairness is “on the nature of the challenged conduct and on the purpose and effect of that conduct.” Massachusetts Employers Ins. Exchange v. Propac Mass, Inc., 420 Mass. 39, 43 (1995).
“Conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes.” Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 474 (1991). Accordingly, “conduct undertaken as leverage to destroy the rights of another party to the agreement,” particularly “unilateral, self-serving conduct . . . during the course of a dispute,” based on a position lacking “substantive merit,” has been found to violate c. 93A. See Massachusetts Employers Ins. Exchange v. Propac Mass, Inc., 420 Mass. at 43. However, “a mere breach of contract, without more, does not amount to a c. 93A violation.” Madan v. Royal Indemnity Co., 26 Mass.App.Ct. 756, 762 (1989), citing Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100-01 (1979). Even a breach accompanied by “sham justifications” has been held not to violate c. 93A, where the conduct lacks an “extortionate quality” arising from use of the breach “as a lever to obtain advantage for the party committing the breach in relation to the other party.” Atkinson v. Rosenthal, 33 Mass.App.Ct. 219, 226-27 (1992).
Not every consumer contract, oral or written, that is noncompliant with any statute, rule, regulation, or court decision, automatically constitutes an “injury” under G.L.c. 93A entitling the plaintiff to recover statutory damages, attorneys fees, and costs. If, however, any person or entity invades a consumer’s legally protected interests, and if that invasion causes the consumer a loss — whether that loss be economic or noneconomic — the consumer is entitled to redress under the consumer protection statute. A consumer is not, however, entitled to redress under G.L.c. 93A, where no loss has occurred. Hershenow v. Enterprise Rent-A-Car Company of Boston, Inc., 445 Mass. 790, 801-02 (2006).
*557 Discussion
I find no unfair or deceptive act or practice on the part of Norwegian. While the Casavants’ desire to postpone or to cancel their cruise so soon after the events of September 11, 2001, is perfectly understandable, Norwegian’s cancellation fees were clearly spelled out in documents received nearly a year before those events occurred. Mr. Casavant indicated that he was aware of the cancellation fees as stated in several of the documents which the Casavants had received. In the year between the booking and the cancellation, there was never an objection by the Casavants to those cancellation policies and there was never an indication by Norwegian that it would not enforce those policies. No one that Mr. Casavant spoke to at Norwegian made any promise that the cancellation fees would not be charged or promised that the trip could be rescheduled. While the refusal to waive the cancellation fees or to permit the Casavants to reschedule the cruise may have been poor business judgment, it was not an unfair or deceptive act or practice.[1] I find that the dispute between the parties over whether the Casavants were entitled to a refund under the circumstances was a legitimate dispute. The position taken by Norwegian did not lack substantive merit and was not a sham justification. There was a legitimate dispute over whether Norwegian owed the Casavants a refund under the circumstances. While Norwegian’s decision may have exhibited insensitivity to the Casavants’ legitimate concerns about traveling at that time, and while it may have exhibited poor business judgment, it was not an unfair or deceptive act.
The refund policy noted in the defendant’s response to the c. 93A demand letter does not apply here. That policy provides that in the event of an objection to a provision of the ticket contract, the passengers would be entitled to a full refund. The Casavants had no objection to the terms of the Passenger Ticket Contract; they simply did not feel comfortable taking a cruise at that time. The defendant did not commit an unfair or deceptive act by not refunding the ticket price to the Casavants under this policy as it did not apply under the circumstances.
The Casavants assert that there were unfair or deceptive acts or practices committed by the defendant in violation of various regulations of 940 CMR §15.01 et seq. I do not find such violations. As noted above, the terms of the cancellation policy were provided to the Casavants nearly a year before the events which led to their desire to cancel or postpone the trip.[2] While the ability to obtain a refund if they disagreed with a provision of the Passenger Ticket Contract was not relayed to the Casavants until the defendant responded to the 93A demand letter, that failure was not a cause of any loss by the Casavants. They did not disagree with a provision of the Passenger Ticket Contract, they simply decided that under the circumstances then present they did not wish to sail. Similarly, the failure by Norwegian to file its fares with the appropriate Massachusetts administrative agency does not give rise to liability under c. 93A. Even assuming such a filing requirement and a violation of that requirement, the plaintiffs have not shown that they suffered any loss as a result of the violation. See Hershenow, supra. Similarly, the claim that the ticket’s limitation of liability for personal injury or death was illegal and, therefore, a violation of c. 93A is to no avail. The plaintiffs cannot show an injury or loss caused by that provision.
For all of the foregoing reasons, I find that the plaintiffs have not established a violation of G.L.c. 93A.
ORDER
Judgment shall enter for the plaintiffs on their claim for a refund in the amount of $2,135.50, plus statutory interest and costs. Judgment shall enter for the defendant on the claim brought pursuant to G.L.c. 93A.

The determination of the Appeals Court that the Casavants had rejected the passenger ticket contract, see Casavant v. Norwegian Cruise Line, Ltd., 63 Mass.App.Ct. 785, 799 (2005), does not mandate a different result. The Court noted that the issues of whether the Casavants were entitled to a full refund of the ticket price and whether there was an unfair or deceptive act or practice on the part of Norwegian were open issues.

In finding that the forum selection clause within the Passenger Ticket Contract was not enforceable because the Casavants had not been given sufficient time to reject the contract with impunity, the Appeal Court noted that there was a “blackout of any prior information” regarding the refund/cancellation policies. It does not appear that the Appeals Court was provided with information regarding the notices of the applicable cancellation fees contained in Exhibits 1, 2, and 4.