Long, Keith C., J.
Introduction
Plaintiff Harvard College has a loan program which it offers certain faculty members to assist them in purchasing homes. It made such a loan to Anita Berizbeita (a newly-hired professor at its Graduate School of Design) and her husband Luis, who used its proceeds, along with a smaller loan from NE Moves and their own funds, to purchase the property at 410 Lexington Road in Concord.*
*602 The Berizbeitas purchased the home from Peter and Lee Ann Bagley, who were small business owners in considerable financial difficulty.[1] As a result of these difficulties, the Concord property was encumbered by a number of mortgages and liens. Harvard wanted its mortgage to be in second position, subordinate only to the NE Moves mortgage, and a title search was performed to determine what other liens existed on the property. What Harvard believed to be all of those obligations were tracked down and satisfied, many for less than face value because their total allegedly exceeded the property’s fair market value. One such lien, however, was missed—a prejudgment attachment in the amount of $182,212.50 in favor of defendants Robert Michaud and Squamscott Press, Inc., arising from a business debt allegedly owed the defendants by the Bagleys. The case in which the attachment was granted, Squamscott Press et al. v. Bagley, Middlesex Superior Court Civil Action No. 09-4315, has still not gone to judgment.
Harvard’s complaint seeks the discharge of defendants’ attachment, arguing that it was “valueless” at the time of the sale (it sat fourth after the mortgages and liens that were paid or discharged) or, in the alternative, to have the attachment “equitably subrogated” to Harvard’s mortgage. The defendants deny that their attachment should be discharged and have asserted a counterclaim arguing that Harvard violated G.L.c. 93A, §11 by not discovering and paying their attachment at or before the time of the closing.[2] Harvard has moved to dismiss defendants’ counterclaim pursuant to Mass.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Because G.L.c. 93A claims are outside the Land Court’s subject matter jurisdiction, the claim was transferred to Superior Court and I was interdepartmentally assigned to hear and resolve it.[3] For the reasons set forth below, Harvard’s motion is ALLOWED and defendants’ G.L.c. 93A counterclaim is DISMISSED in its entirety, WITH PREJUDICE.
Standard of Review
A motion to dismiss for failure to state a claim upon which relief can be granted is governed by Mass.R.Civ.P. 12(b)(6). With certain exceptions not applicable here,[4] all well-pleaded non-conclusory factual allegations by the claimant are accepted as true, as well as all reasonable inferences from these facts. In addition:
While a complaint attacked by a . . . motion to dismiss does not need detailed factual allegations ... a plaintiffs obligation to provide the “grounds” of his “entitle[ment] to relief’ requires more than labels and conclusions . . . Factual allegations must be enough to raise a right to relief above the speculative level... [based] on the assumption that all allegations in the complaint are true (even if doubtful in fact). What is required at the pleading stage are factual allegations plausibly suggesting (nor merely consistent with) an entitlement to relief, in order to reflect the threshold requirement of [Fed.R.Civ.P.] 8(a)(2) that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief.
Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting from Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1969 (2007). The question then becomes whether these facts state a viable claim as a matter of law.
As noted above, defendants allege that Harvard failed to discover and pay off their attachment at or before the time of closing; the question to decide is whether that failure constitutes an “unfair method of competition” or an “unfair or deceptive practice” in the context of any trade or commerce. G.L.c. 93A, §2(a); G.L.c. 93A, §11.1 find that it does not.
Analysis
Defendants’ counterclaim charges plaintiff with violating G.L.c. 93A by not discovering and paying off the attachment, and with engaging in willful and knowing conduct in so doing. G.L.c. 93A, §11 liability requires “. . . unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.”[5] Because “unfair” and “deceptive” are not defined under the statute, courts “focus on the nature of [the] challenged conduct and on the purpose and effect of that conduct as the crucial factor in making a G.L.c. 93A fairness determination.” Mass. Employer Insurance Exchange v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995) (holding that unilateral, self-serving conduct undertaken as leverage to destroy the rights of another amounts to an unfair act or practice under G.L.c. 93A). Moreover, courts also consider criteria under the Federal Trade Commission Act, 14 U.S.C. §45(a)(l)(1976). For example, the court in Levings v. Forbes & Wallace, 8 Mass.App.Ct. 498, 504 (1979), looked for conduct that was (1) within “at least the penumbra of some common-law, statutory, or other established concept of fairness; (2) . . . [was] immoral, unethical, oppressive, or unscrupulous . . .” 29 Fed. Reg. 8325, 8355 (1964) (holding that there was no G.L.c. 93A§11 violation where the purchase order contained no price, the buyer intended to pay for the reasonable value of the work performed, and he offered to pay more than half the amount of the bill it was tendered).
Harvard argues that G.L.c. 93A does not apply because its loan program is part of its educational activities and not “trade or commerce.” I am dubious of that argument. See Planned Parenthood Fed’n of Am., Inc. v. Pregnancy of Worcester, Inc., 398 Mass. 480, 492-93 (1986) (holding that an entity’s status as a charitable corporation is not itself dispositive of the issue of whether c. 93A applies). Its transaction with the Berizbeitas is a loan and mortgage after all, one of many made by Harvard on which it expects to make at least some measure of return, and the fact that it *603 is allegedly part of an overall compensation package does not change that. Surely Harvard would not argue that allowing favored faculty members to invest in a fund it managed—an opportunity offered as part of their compensation package—would insulate Harvard from 93A claims if there were material misrepresentations or other misconduct in connection with such investments. See Bakis v. Nat’l Bank of Greece, No. 92-1561, 1998 Mass.Super.Lexis 731 (Mass.Super.Ct. Dec. 15, 1998). And surely Harvard would not argue that its faculty member could not bring a 93A action against it if there was fraud or deceit involved in the terms of the mortgage. Just because the loan and its associated mortgage are a “benefit” does not change their essential nature—an arm’s length transaction, reflected in detailed note and mortgage documents giving Harvard the right to take legal action if their terms are breached.
But I need not decide whether the loan and mortgage were made within the scope of “trade and commerce” because there is an independent, more fundamental reason why Harvard has no 93A liability to the defendants on the facts as alleged. That is because it is not an “unfair or deceptive” act to fail to pay off an existing encumbrance when a new loan is made secured by the same property, nor even to fail to give notice to existing lienholders of new (and, by law, subordinate) mortgages. G.L.c. 183, §4. Contrary to defendants’ argument, which contemplates a notice requirement akin to that found in foreclosure proceedings, a new lender (e.g. Harvard) simply has no duty or responsibility to do so. Under G.L.c. 244, §14, for example, a mortgagee has a good faith obligation to “secure and protect the interests of the mortgagor, the owner of the equity of redemption and junior lienors.” Bon v. Graves, 216 Mass. 440, 446 (1914); see also Citizens Bank of Mass. v. O’Connell, 15 LCR56 (2007) (holding that a lender must pay the junior lienholder damages to make it whole where the foreclosing lender failed to provide a junior lienholder with notice of the sale). But here, Harvard did not foreclose on the Concord property and, in the context of its role as lender and mortgagee, maintained a duty only to the borrowers, Luis and Anita Berizbeita. See Bank Boston, N.A. v. Yodice, 54 Mass.App.Ct. 901 (2002) (holding that an alleged failure to provide proper notice of a potential post-sale deficiency did not bar recovery by a bank which had no obligation to give notice under G.L.c. 244, §17B).
This argument is strengthened further by the threshold for measuring unfair dealings under G.L.c. 93A, §11. The standard set forth in Levings and Mass. Employer Insurance Exchange requires a deliberate, self-serving act that is then measured against the norms of fair dealing in good faith. For example, where parties are contractually bound, a mere breach of contract, “even if deliberate and for reasons of self-interest,” is insufficient to give rise to liability under G.L.c. 93A. Atkinson v. Rosenthal 33 Mass.App.Ct. 219, 226 (1992) (holding that a G.L.c. 93A violation arises from a “consistent pattern of the use of a breach of contract as a lever to obtain advantage for the party committing the breach in relation to the other party”). To rise to the level of a G.L.c. 93A violation, the breach of contract or conduct must possess an extortionate quality. Id. See also Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451 (1991) (holding that conduct taken as leverage to destroy the rights of the other pariy to the agreement gives rise to a G.L.c. 93A violation).
In the case at bar, defendants allege Harvard knew or should have known about the attachment and, in not making payments to satisfy the encumbrance on the Concord property, violated G.L.c. 93A. This charge of negligence does not satisfy the standard in Levings and Mass. Employer Insurance Exchange, which requires a deliberate, unfair or deceptive act. As noted above, Harvard had no relationship with defendants from which a duty would arise. Not paying defendants’ attachment does nothing to promote Harvard’s self-interest. Indeed, quite the contrary. To gain any chance of priority over the attachment, Harvard was required to bring this lawsuit. And even where the parties are contractually bound, a 93A violation requires a level of egregious conduct that, in the present case, does not exist. See Levings, 8 Mass.App.Ct. 498; Mass. Employer Insurance Exchange, 420 Mass. 39.
Further, the attachment at issue was prejudgment. There still has been no final adjudication that the obligation for which the attachment was granted is actually owed, or in what amount. It is undisputed that Harvard has no liability for the underlying debt.
Lastly, nothing Harvard did changed defendants’ position in any way. To the extent the defendants had a valid claim against the Bagleys before Harvard’s loan was made, that claim remains. To the extent the defendants had a valid, ultimately collectible attachment before Harvard’s loan was made, that too remains. See G.L.c. 233, §§62 et seq. (real estate attachments, properly recorded, run with the land).[6] In these circumstances, it simply cannot be that a failure to pay off a prejudgment attachment is an unfair or deceptive trade practice.
Conclusion
For the foregoing reasons plaintiffs motion to dismiss defendants’ G.L.c. 93A, §11 counterclaim is ALLOWED.

Editor’s Note: The author is a Justice of the Land Court.

The Bagleys and their businesses subsequently filed for bankruptcy.

The defendants do not state explicitly that their claim was made pursuant to §11, but that is clear from the face of the counterclaim. The act alleged to violate G.L.c. 93A (Harvard’s failure to pay the defendants’ prejudgment attachment) is between two businesses (Harvard and defendants) and, among other things, no G.L.c. 93A, §9 demand letter was *604 alleged to have been sent—a prerequisite to bringing a §9 action.

defendants voluntarily dismissed their other counterclaim (Count II), which was based on a theory of quantum meruit.

For example, allegations in a complaint (or here, a counterclaim) cannot contradict documents they purport to characterize. See Ng. Bros. Constr, Inc. v. Cranney, 436 Mass. 638, 647-48 (2002).

“ Trade’ and ‘commerce’ shall include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, any security as defined in subparagraph (k) of section four hundred and one of chapter one hundred and ten A and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth.” G.L.c. 93A, §1 (1992 ed.).

Note that it is Harvard that must bring an action to have the attachment removed, not the other way around.