Leibensperger, Edward R, J.
This action arises out of an agreement between plaintiff, American Translation Partners, Inc. (“ATP”), and defendant, Lahey Clinic Hospital, Inc. (“Lahey”), whereby ATP provided interpreters to assist medical professionals in their interactions with non-English speaking patients. The agreement contained a non-solicitation provision that ATP claims was breached by Lahey. ATP also claims that Lahey’s Administrator of Interpreter services, defendant Ursula Tice-Alarcon, tortiously interfered with ATP’s relationship with Lahey. Lahey and Tice-Alarcon move for summary judgment on the principal ground that ATP cannot now, or in the future, prove damages.
BACKGROUND
ATP and Lahey began their relationship in 2002. ATP provided interpreters to Lahey continually over the approximately twelve years from 2002 to 2014. Effective on April 1, 2010, ATP and Lahey entered into a written Interpreters Contract Staffing Service Agreement (“Service Agreement”) that by its terms would renew until April 1, 2013. The Service Agreement was not exclusive, meaning that Lahey was entitled to purchase interpreter services from other providers: “Nothing herein shall be construed as limiting [Lahey’s] right to retain interpreter personnel on a permanent or temporary basis through other agencies (other than [ATP’s] Interpreters) . . .” Service Agreement, ¶11.
Paragraph 3 of the Service Agreement, entitled “Request Procedures; No Hire” contains a provision *143 that may be described as a non-solicitation provision: “[Lahey] shall not, directly or indirectly, solicit, hire nor engage the services of any Interpreter who has performed services for [Lahey] for a period of twenty-four (24) months following completion of such Interpreter’s last assignment with [Lahey] from [ATP].”
When the Service Agreement expired by its own terms in April 2012, the parties continued their relationship through an Interim Agreement that extended the terms of the Service Agreement except for some changes to payment terms. When the Interim Agreement expired in the fall of 2013, the parties were negotiating to enter into a new contract. During the negotiations, Lahey continued to purchase services pursuant to the Interim Agreement. The negotiations failed. The last date on which ATP provided interpreter staffing services to Lahey was March 11, 2014.
ATP alleges that certain individual interpreters who had been provided to Lahey by ATP were engaged by Lahey through another services provider, Baystate Interpreters, Inc. (“Baystate”), within 24 months of when the individuals performed work at Lahey through ATP. For example, Gerardo Cruz was placed at Lahey by ATP at various times up to January 2014. Lahey engaged Gerardo Cruz, through Baystate, in the spring of 2013. See Complaint, is 31 and 32, and Lahey’s Answer thereto. Also, Alejandro Horacio Cimardo was placed at Lahey by ATP from February 2013 to May 30, 2013. In June 2013, Cimardo was engaged by Lahey through Baystate. See Complaint, Is 33 and 34, and Lahey’s Answer thereto. In April 2014, ATP hired a private investigator who took pictures of interpreters arriving at Lahey. ATP personnel identified six of the interpreters arriving at Lahey as individuals who ATP claims were providing services in violation of the non-solicitation provision.
In answer to an interrogatory requesting that ATP “[i]temize and quantify any and all damages ATP is seeking to recover” ATP responded “[a]t least approximately Two Hundred Two thousand Dollars ($202,000) for lost revenue.” In addition, ATP responded that it is seeking ”[a]s yet undetermined” amounts for costs incurred and lost profits. Following that response in November 2014, Lahey took the deposition of an ATP representative, Denise D’Amaddio, on June 23, 2015. In her deposition, D’Ammadio explained that the $202,000 figure was calculated based solely on the total loss of revenue ATP received from Lahey prior to 2013, compared to the revenue ATP received from Lahey during the period from July 2013 to February 2014.
With respect to ATP’s claims of “undetermined” damages, D’Ammadio confirmed that she is responsible at ATP “for most of the economic things that happen.” Yet she made no effort to quantify the “undetermined” damages and was not aware of any calculation by anyone else. In response to Lahey’s motion for summary judgment, ATP submitted no affidavits or other evidence to support a claim for damages other than D’Ammadio’s deposition testimony.
With respect to ATP’s claim of improper interference with advantageous relationships, the only evidence submitted by ATP in the Statement of Material Facts is the following. On June 13, 2013, Scott Crystal (from ATP) wrote to a supervisor at Lahey criticizing Dr. Michael Macht-Greenberg for his installation of protocols for new paperwork requirements and asserting that such requirements were compromising patient care. Macht-Greenberg was upset over the letter and did not like the fact that Crystal had sent the letter. Lahey allegedly reduced its demand for services from ATP after this letter although Lahey asserts that it had already begun reducing services from ATP before the letter. With respect to ATP’s claim of intentional interference with advantageous relationships by defendant, Tice-Alarcon, the only evidence submitted by ATP in the Statement of Material Facts is that, in her deposition, Tice-Alarcon testified that she viewed ATP as “pimps.”
ANALYSIS
Summary judgment is appropriate where there are no genuine issues of material fact and the moving parly is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corn, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence negating an essential element of the opposing party’s case or by demonstrating that the opposing parly has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 305, 809 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson, 404 Mass, at 17. An adverse parly cannot defeat a motion for summary judgment merely by resting on its pleadings and assertions of disputed facts, rather it must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that there is agenuine issue for trial. Mass.R.Civ.P. 56(c). When deciding a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibilify, or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
ATP’s complaint asserts four counts against the moving defendants: Count I—breach of contract against Lahey; Count II—tortious interference with advantageous relationships against Lahey; Count III— violation of G.L.c. 93A against Lahey; Count V—tor- *144 tious interference with advantageous relationships against Tice-Alarcon.
As‘to Count I, breach of contract, Lahey makes a weak attempt to argue that ATP failed to offer sufficient evidence of breach of contract. At oral argument, confronted by its admission to the allegations regarding the engagement by Lahey of Cruz and Cinardo, Lahey conceded that there is “arguably” evidence of breach of contract. Lahey then concentrated its argument on the alleged lack of evidence of any damages, discussed below.
Count III is ATP’s claim that Lahey’s breach of contract amounted to an unfair act or practice in violation of G.L.c. 93A. Lahey argues that this count should be dismissed because mere breach of contract, without more, does not constitute a c. 93A violation, citing Madan v. Royal Indem. Co., 26 Mass.App.Ct. 756, 762 (1989). It is not quite that simple, however. The court must “focus on the nature of challenged conduct and on the purpose and effect of that conduct as the crucial factors in making a G.L.c. 93A fairness determination.” Massachusetts Employers Insurance Exchange v. Propac-Mass, Inc., 420 Mass. 39, 42-43 (1995). “While it is correct that a breach of contract alone does not amount to an unfair act or practice under G.L.c. 93A . . . conduct undertaken as leverage to destroy the rights of another party to the agreement while the agreement is still in effect. . . has a coercive quality that, with the other facts, warrant(s) a finding of unfair acts or practices. Id. at 43. Moreover, where the conduct is ”in disregard of known contractual arrangements" and intended to secure benefits for the breaching party the conduct constitutes an unfair act or practice. Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 474 (1991), quoting Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854, 857 (1986).
Taking the summary judgment record and indulging all reasonable inferences in favor of ATP, a triable issue is presented with respect to a violation of c. 93A. Did Lahey intentionally breach the contract and did it do so to either punish ATP or to gain a financial benefit? Persuasive evidence will have to be offered that Lahey knew that it was likely breaching the Services Agreement but decided to do so anyway either as a lever in its ongoing contract negotiations with ATP or to simply reap unfair benefits. On this record, summary judgment in favor of Lahey must be denied.
The claims against Lahey and Tice-Alarcon (Counts II and V) for interference with advantageous relationships may easily be dismissed based upon the summary judgment record. The claims rest on the premise that defendants interfered with ATP’s contracts with its interpreters. ATP alleges that such interference was done “with the intent to gain a financial advantage.” Complaint, ¶¶40, 53. Assuming that allegation to be true, the law is that acting in one’s own financial interest is not sufficient to sustain a claim for intentional interference. United Truck Leasing Corp. v. Gelt-man, 406 Mass. 811, 817 (1990). ATP must proffer evidence from which it may inferred that defendants actually interfered with ATP’s relationships and did so with improper motive or improper means. Id. ATP’s speculation that Macht-Greenberg was looking to retaliate against it in some undescribed way alleges no act of interference, no improper means and no improper motive. And the Tice-Alarcon testimony in her 2015 deposition that she viewed ATP as a “pimp” falls far short of admissible evidence of improper interference, by means or motive, with the interpreters’ contract with ATP. These counts must be dismissed.
Finally, Lahey argues that ATP cannot prove damages as evidenced by the summary judgment record. With respect to ATP claim of damages from “lost revenue” of $202,000, Lahey contends that this lost revenue from 2013 to 2014 was solely as a result of the end of the Services Agreement and the winding down of the business relationship.[2]. While the “lost revenue” measure is certainly imprecise and subject to a motion for further disclosure of how the calculation may be tied to the engagement by Lahey of specific interpreters, the evidence shows that ATP does have a viable claim for at least some damages. For example, both Cruz and Cimardo were engaged by Lahey through Baystate when they could have been, perhaps should have been, engaged through ATP. ATP lost the revenue from those placements and, thus, suffered some damages.[3]
ORDER
For the reasons stated above, defendants’ Motion for Summary Judgment is ALLOWED as to counts II and V of the Compaint. Accordingly, defendant Tice-Alarcon is dismissed from this action. Otherwise, the motion for summary judgment is DENIED.

 Lahey alleges that D’Ammadio “testified that this amount reflected revenue lost as a consequence of the end of its business relationship with Lahey.” Memorandum in Support of Defendant’s Motion for Summary Judgment, p. 9. Areview, however, of the cited portions of the transcript shows that D’Ammadio did not so testify.

 At oral argument, Lahey contended that it did not request from Baystate, or anyone else, the services of any particular individual as an interpreter. Thus, ATP lost no revenue as a result of Baystate sending Cruz, for example, to Lahey because Lahey would not have asked for Cruz from ATP had the non-solicitation provision-been recognized and implemented. The summary judgment record, however, contains no evidence to this effect.