**Wilfred J. SMYLY, III, and Smyly Hyundai, Inc., Plaintiffs,**

v.

**HYUNDAI MOTOR AMERICA, Defendant.**

**Civ. A. No. 89–1220–MA–A.**

United States District Court, D. Massachusetts.

April 29, 1991.

Virginia Lee, Michael J. Flynn, Flynn, Sheridan & Tabb, Boston, Mass., for plaintiffs.

Daniel L. Goldberg, John R. Snyder, Bingham, Dana & Gould, Boston, Mass., for defendant.

## OPINION

BAILEY ALDRICH, Senior Circuit Judge.[*]

Wilfred J. Smyly III (Smyly) and Smyly Hyundai, Inc. (SH) sue Hyundai Motor America (HMA) for claims arising out of an automobile dealership established in June, 1986, and renewed in June, 1988. Both agreements were in two parts: relatively brief special terms, containing the particular operative provisions applicable to the parties, and so-called standard terms, uniformly found in all HMA dealership agreements nation-wide. Included in the standard terms was a paragraph headed WAIVER OF TRIAL BY JURY. Pursuant to this, HMA moved to strike plaintiff's jury claim herein. The judge to whom the case was originally assigned allowed the motion, but, on receipt of a motion for reconsideration, reversed himself forthwith. Upon the case being assigned to the present court for trial, HMA moved for an evidentiary hearing, and reconsideration in its light. Having conducted this hearing, the court finds as follows.

Hyundai automobiles, manufactured in Korea, are a relatively new import. In

---

[*] Sitting by designation.

1985 HMA advertised nation-wide for dealerships. Smyly, with others, attended a HMA meeting, following which the parties executed cross-declarations of intent. At this time Smyly had not been shown a copy of what would be the standard terms of the contract, nor were they summarized or otherwise described. He knew, however, from experience as a holder of other dealerships, that they might be extensive, but made no inquiry.

It was a condition of the agreement, and stated in the letter of intent that plaintiffs first build, or lease, a substantial building and showroom for exclusive Hyundai use, and Smyly did arrange for such, at the cost of $2 million.

When Smyly, as president of SH, executed the special terms in April, 1986, the standard terms, although referred to as incorporated therein, were not attached, tendered, or otherwise made known. He continued to make no inquiry as to their content; nor did he more than glance at them, if that, when the complete agreement, executed by HMA, was ultimately received. Neither then, nor at any other relevant time, did he note the jury waiver provision.

A similar procedure occurred with respect to the 1988 agreement. This agreement, when executed, contained the same standard terms. That fact was not told Smyly in advance; nor did he inquire, or examine afterwards, or note the jury waiver provision. The evidence shows that he had executed a Buick dealership in 1985, and a Sterling dealership in 1987. The former contained no jury waiver, but the latter so provided. Smyly had not noted that, either.

At the outset of the standard terms was a Table of Contents, in individual lines. Viz.,

19. MISCELLANEOUS PROVISIONS . . . . . 27

. . .

N. WAIVER OF TRIAL BY JURY . . 29
Thereafter, on page 29, appeared,

**N. WAIVER OF TRIAL BY JURY**

HMA and DEALER hereby waive, to the extent permitted by law, the right to trial by jury for all disputes, controversies or claims which may arise between DEALER and HMA out of or in connection with this Agreement, or its construction, interpretation, effect, performance or non-performance, termination or the consequences thereof, or in connection with any transaction contemplated between the parties.

There can be no question under the circumstances but that plaintiffs would be bound by that paragraph if it were an ordinary business provision. *Canney v. New England Tel. & Tel. Co.*, 353 Mass. 158, 165, 228 N.E.2d 723, 728 (1967). The court is content to recognize, however, that since it is a waiver of a constitutional right there is, to an extent, a burden on the defendant. It has been put that defendant must show the agreement was made "knowingly and intentionally." *National Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir.1977). *But see K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 758 (6th Cir.1985) (burden on party attacking the provision). If these words are given their absolute meaning, plaintiffs' position is unassailable. At issue is the degree, if any, that they are more embracing.

At the outset is to be borne in mind that, although spoken of in terms of waiver, this is, basically, a contract to litigate disputes before a judge without jury. The fact that the dealer, in agreeing, is foregoing a constitutional right does not change the fact that it is a bilateral contract as distinguished from a unilateral act of waiver. Could it be thought, for example, if the manufacturer's representative had put the agreement in front of the prospective dealer and pointed out the waiver provision, that the dealer could avoid it by persuading the court that his mind was on profits and losses, and he had paid no attention? Yet a criminal defendant claimed to have waived a jury trial, might, in some instances, show subjective lack of attention. Our question must be the degree, if any, that the constitutional right should weaken the force of contractual principles in a civil matter.

In this connection the court makes further findings. If, at any time, including 1985, Smyly had examined the standard terms and refused to accept the jury waiver provision, HMA would have refused the dealership. This was a nation-wide provision, and there is no indication that there was such a buyers' (i.e. dealers') market that HMA would negotiate the standard terms. Smyly freely concedes as much. He also concedes that he intentionally did not seek to read them. Would he have refused to be a dealer if he had?

Total indifference to the terms does not answer this question, but it goes a long way. More significant is Smyly's knowledge that if he complained he would not have received a dealership. Asked, over his objection, what he would have done had he noted the waiver provision, he said he would have thought about it, and discussed it with his father (a dealer), but he went no further. The court is confident that this was not such a basic matter that it would have stood in his way where Smyly knew he must accept it, and was anxious to deal.

Plaintiffs say that whatever voluntariness there may have been in 1985 disappeared in 1986 (and 1988) because of the economic pressure of the existence of the $2 million building whose value would be greatly diminished if the dealership were refused. This is a straw man. Once it appears that an action is voluntary it does not become any the less such by a showing of pressures in the same direction. When Smyly signed the letter of intent he voluntarily committed himself to the building irrespective of the content of the standard terms. Particularly when he never gave the matter another thought, he cannot say that the completion of the building was a changed situation.

A waiver of jury trial is not an unreasonable agreement, nor is it uncommon. Smyly was a sophisticated businessman, who held other dealerships. As between a defendant who not only plainly set out the jury waiver, but foretold it in capital letters in an introductory table of contents, and a plaintiff who showed conscious disregard for the entire special terms, and would

have accepted the provision had he looked, the court believes to grant a legal windfall because of lack of actual knowledge is uncalled for. The motion to strike the jury demand is allowed.