Kaplan, Mitchell H., J.
This action arises out of a project to construct a facility for the defendant, L.A. Fitness International, LLC (“LA Fitness”), in Saugus, Massachusetts (the “Project”). LA Fitness contracted with defendant, Pinnconn, LLC (“Pinnconn”), to act as general contractor on the Project. Pinnconn, thereafter, entered into subcontracts with various parties, including the plaintiff, Soarmar, Inc. (“Soarmar”). Pinnconn failed to pay its subcontractors and was terminated by LA Fitness. Soarmar obtained a mechanics lien on the Project, pursuant to G.L.c. 254, §4, and filed this action to recover for the labor, material, and services that it provided to the Project. That lien was dissolved upon the filing of a lien bond by LA Fitness, as principal, and defendant, Insurance Company of the West (“ICWj, as surety, in the amount of the lien. Soarmar asserts claims against LA Fitness for: breach of contract; goods sold and delivered; quantum meruit; unjust enrichment; and violation of G.L.c. 93A; and against LA Fitness and ICW under the bond. LA Fitness’s and ICWs joint motion for summary judgment dismissing all claims asserted against them and Soarmar’s cross motion for summary judgment requesting that judgment enter for it in the amount of the value of the goods and services it supplied to the Project, at the subcontract prices, are now before the court. For the following reasons, LA Fitness’s and ICW’s motion is ALLOWED and Soarmar’s motion is DENIED.
FACTS
The following relevant facts are undisputed or viewed in the light most favorable to Soarmar.
LA Fitness leased the property on which the Project is constructed from Mansfield and Beacon. On or about November 29, 2007, LA Fitness entered into a contract with Pinnconn to act as the general contractor on the Project (the “Contract” or “Prime Contract”). Of significance to the pending motions are the following provisions from the general contract:
§14.3.1 Contractor shall promptly pay each Subcontractor, upon receipt of payment from the Owner, out of the amount paid to the Contractor on account of such Subcontractor’s portion of the Work, the amount to which said Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of such Subcontractor’s portion of the Work.
§19.2.1 The owner may terminate the Contract if the Contractor: ... 2 fails to make payment to Subcontractors for materials or labor in accordance with agreements between the Contractor and the subcontractors ... 4 otherwise is guilty of substantial breach of a provision the Contract Documents.
§19.2.3 When the Owner terminates the Contract for one of the reasons stated in Section 19.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.
Exhibit C [to contract], p. 2 [with respect to periodic applications for payment to the Contractor] . . . Contractor shall furnish proof of payment of construction obligations for all prior payments received by Contractor including but not limited to the partial or final releases and waivers of lien from all Lien Claimants or potential lien claimants. The furnishing of proof of payment and releases of lien as set forth herein shall be a condition precedent to Contractor’s entitlement to receive such pending payment.
On the thirtieth day of each month following the month of submission of an Application for Payment which has been submitted in accordance with the terms of this Agreement, Owner shall pay or cause to be paid to contractor ninety percent ... of the values, based upon the approve estimate of the Work completed to the date of such Application, of labor and material which have been stored at the Site ... or incorporated into the Project by the contractor during the period for which the Application for payment has been submitted.
Exhibit C [to Contract], pp. 2-3. Owner shall not be obligated to make any payment to Contractor if, and as long as, any one or more of the following conditions exist: (1) Contractor has failed to perform any of its obligations hereunder or otherwise is in default under this Agreement; (2) Contractor has failed to furnish to Owner satisfactory proof of payment to its subcontractors and suppliers and/or lien waivers and releases in the form and manner required hereunder; ... (5) Contractor has failed to make payment promptly or satisfactorily bond off or escrow fund to any lien claimants; (for the amount of any asserted or outstanding lien)...
Exhibit C [to Contract], p. 3. All payments by Owner to Contractor shall constitute trust funds in Contractor’s possession, to be applied first towards payment of all persons and entities (other than Contractor), including but not limited to, all Lien *22 Claimants . . . , having claims relating to the Work, before application for any other purpose.
After executing the Prime Contract, Pinnconn entered into a subcontract with Soarmar, dated January 7, 2008, to provide labor and materials on the Project (the “Subcontract”). The Subcontract referenced the Prime Contract, but LA Fitness was not a party to the Subcontract and undertook no contractual obligations to Soarmar.
Pinnconn submitted its first application for payment on December 31, 2007, and its second application on January 28, 2008. This latter application included a certification that it had completed $960,023 worth of work on the Project and requested payment of $690,996 (and acknowledged that $96,002 would be held as the 10% retainage). LA Fitness paid the amount requested in this second application to Pinnconn on March 4, 2008 (the “March 4th Payment”).
During February and March 2008, Soarmar performed work on the Project that entitled it to be paid $44,226.94 under the Subcontract. The amount of this work was included in Pinnconn’s applications for payment numbers 3 and 4, which were submitted to LA Fitness prior to the end of March 2008.
On March 25, 2008, Robert McQuade, the Chief Financial Officer of Pinnconn, told LA Fitness’s representative on the Project that Pinnconn had not paid its subcontractors anything from the March 4th payment, that money was gone, and Pinnconn had only $25,000 in assets remaining, which it was going to use to close down its operations.
On March 28, 2008, LA Fitness sent Pinnconn a Notice of Termination in which it asserted that Pinnconn was in default of the Contract for, among other things, failing to make prompt payment to its subcontractors. It thereafter entered into a new general contract with Konover to complete the Project.
On July 2, 2008, Soarmar recorded a Notice of Contract and a Statement of Account in the Essex South Registry of Deeds, pursuant to G.L.c. 254, §§4 and 8, respectively, to establish a mechanic’s lien on LA Fitness’s interest in the Project in the amount then due it under the Subcontract. On July 9, 2008, LA Fitness received notice that Soarmar had recorded a Notice of Contract. On July 30, 2008, LA Fitness, as principal, and ICW, as surety, recorded a lien bond in the penal sum of $44,226.94, pursuant to G.L.c. 254, § 14, in order to dissolve the lien. On October 27, 2008, Soarmar filed the instant complaint to enforce its claim against the lien bond and assert related claims.
DISCUSSION
A. Summary Judgment Standard
Summary judgment will be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). To prevail on its summary judgment motion, the moving party must affirmatively demonstrate the absence of a triable issue, and that the summary judgment record entitles it to a judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). If the moving party does not have the burden of proof at trial, as is the case here, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991). “(A]ll evidentiary inferences must be resolved in favor of the [nonmoving party].” Boyd v. National R.R. Passenger Corp., 446 Mass. 540, 544 (2006).
The nonmoving party, however, cannot defeat a motion for summary judgment by merely asserting that facts are disputed. Mass.R.Civ.P. 56(e); LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Rather, to defeat summary judgment the nonmoving party must “go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991). “Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient.” Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Ass’n, 399 Mass. 886, 890 (1987), quoting Madsen v. Erwin, 395 Mass. 715, 721 (1985).
B. The Claim to Recover Against the Lien Bond
The court begins by considering Soarmar’s claims against LA Fitness and ICW to recover against the lien bond. Chapter 254, which creates the subcontractor’s right to establish a mechanic’s lien against an owner, “is strictly construed against the party claiming the lien.” Ng Brothers Constr., Inc., v. Cranney, 436 Mass. 638, 644 (2002). The party seeking to enforce the lien carries the burden of proof with respect to each statutory element necessary to establish its right to recovery. Id. In consequence, Soarmar must produce admissible evidence in opposition to the defendants’ motion for summary judgment sufficient to create, at the minimum, a disputed issue of material fact with respect to each element that it must establish to enforce its claim against the lien bond.[2]
In the present case, the defendants’ motion turns on the following provision of G.L.c. 254, §4: “Such lien shall not exceed the amount due or to become due under the original contract as of the date notice of the filing of the subcontract is given by the subcontractor to the owner.”[3] It is undisputed that Soarmar did not file a Notice of Contract and provide notice of the filing until July 2008. The question on which this claim turns is, therefore, whether any amount was still due *23 Pinnconn, or would become due Pinnconn, under the Prime Contract in July 2008.
In Bloomsouth Flooring Corp. v. Boys’ and Girls’ Club of Taunton, Inc., 440 Mass. 618 (2003), the Supreme Judicial Court considered this provision of §4. It held that the word “due” as used in the quoted sentence was to be construed consistently with its standard dictionary definition and meant an amount owed or payable by the owner to the general contractor. Accordingly, “ ‘to become due’ means ‘to become owed’ or ‘to become payable.’ ” Id. at 623. In Bloomfield, as in the present case, the general contractor had abandoned the project and been terminated by the owner before the Notices of Contract were recorded. The SJC concluded that by its conduct the general contractor had “committed a wilful default that terminated any right it may have had to further payment under the contract. See Glazer v. Schwartz, 276 Mass. 54, 57 (1931) (’where the default is wilful there can be no recovery on the contract or on a quantum meruit’).” Id. Therefore, by the time the Notices of Contract were filed nothing was owed or payable, or could become owed or payable, to the general contractor; and this included retainage held by the owner at the time of the breach, because the retainage was intended to limit the owner’s damages not to provide security to the subcontractors. Further, as here, the general contract provided for release of the retainage only upon substantial completion of the work, which had not occurred. In consequence, the subcontractors could not establish an element of their claim to enforce their mechanic’s liens.
In the present case, on March 25th, Pinnconn’s CFO told LA Fitness that it had not used the March 4th payment to pay its subcontractors, as expressly required by the Contract, that money was gone, and it then had only $25,000 in assets remaining, which it was going to use to close down its operations. The Contract provisions quoted above expressly and repeatedly state that Pinnconn is obligated to pay its subcontractors, first and promptly, from the payments it receives from LA Fitness for any subcontractors’ work included in an application for payment. The Pinnconn CFO’s March 25th statements constituted an admission by Pinnconn that it had willfully breached a clearly material term of the Prime Contract and supported the Notice of Termination for contract default that IA Fitness sent Pinnconn on March 28, 2008. Indeed, there is no evidence in the summary judgment record that Pinnconn disputed LA Fitness’s right to terminate the contract for cause. To the con-traiy, on April 17, 2008, Pinnconn assigned all of its rights in the Project to Konover, the successor general contractor, including its rights under all of the subcontracts that Pinnconn had entered into to perform the Prime Contract.
Soarmar argues that there are a number of facts that distinguish its position from that of the subcontractors in Bloomsouth; however, none of these arguments have merit.
Soarmar’s primary argument is that, because Pinnconn had submitted applications 3 and 4 for payment to LA Fitness in March before the termination, and those applications included the $44,000 due Soarmar for work on the Project, the amounts Pinnconn requested were still “due” when Soarmar recorded the Notice of Contract in July. First, whether these applications referenced work done by Soarmar is of no moment. §4 requires no matching of a particular subcontractor’s work to amounts due the general contractor. If any money were owed or payable to Pinnconn in July under the Prime Contract, Soarmar’s lien could have been enforced against such amounts, regardless of whether the underlying work had been done by Soarmar, some other subcontractor, or Pinnconn itself. Soarmar’s difficulty is that nothing was due Pinnconn in July. The fact that Pinnconn had submitted applications for payment that remained outstanding on the date of the Notice of Termination is of no consequence because IA Fitness had no duty to honor them. Among other relevant terms quoted above, the Prime Contract expressly states;
Contractor shall furnish proof of payment of construction obligations for all prior payments received by Contractor including but not limited to the partial or final releases and waivers of lien from all Lien Claimants or potential lien claimants. The furnishing of proof of payment and releases of lien as set forth herein shall be a condition precedent to Contractor’s entitlement to receive such pending payment.
As of March 25th, not only had Pinnconn not furnished proof that it had paid its subcontractors (i.e., “potential lien claimants") what they were due out of the March 4th payment, it had informed LA Fitness that no such proof would be forthcoming, because it had spent the money on other things and had none left to pay the subcontractors. In consequence, not only had Pinnconn not fulfilled the condition precedent to its right to receive any further payment, it acknowledged that it could not fulfill it in the future, and there was no amount owed or payable to it from LA Fitness after March 25th.
The defendants have asserted that the custom in the construction industry is that “prompt payment” of subcontractors, as required by the Prime Contract, means payment within five days of receiving money from the owner. Soarmar disputes that contention and offers evidence that it may be fifteen days. Whether the accepted number of days between receipt of payment from the owner and disbursements to subcontractors in the construction industry is five days or fifteen days is not material to the resolution of the pending motions. On March 25th, twenly-one days after receipt of the March 4th payment, Pinnconn declared not only that it had not paid its subcontrac *24 tors, but that it had no money to do so. Stated differently, it confessed that it had breached its contractual obligations by not using the March 4th payment to pay its subcontractors and acknowledged that it could not cure the breach.
Soarmar also argues that LA Fitness’s affidavit, to the extent that it reports the statements made by Pinnconn’s CFO, constitutes hearsay that cannot support the entry of summary judgment. It does not. The LA Fitness affiant spoke directly with the CFO, who was clearly authorized to speak on behalf of Pinnconn with respect to matters involving Pinnconn’s financial condition. The CFO’s statements are the statements of Pinnconn regarding its inability to pay its subcontractors and inabiliiy to complete the Project. Moreover, as noted above, it is Soarmar which has the burden of proving its right to recover against the lien bond — in this instance, the burden of proving that there were amounts owed Pinnconn by LA Fitness under the Prime Contract in July 2008. It is not enough to assert that perhaps the CFO was not speaking the truth or was for some unstated reason not authorized to speak on behalf of Pinnconn. Rather, Soarmar must offer some admissible evidence to the effect that Pinnconn had paid, or at least intended to pay, its subcontractors amounts due them for work included in Pinnconn’s second request for payment to LA Fitness, i.e., the request that supported the March 4th payment. It has submitted no such evidence in opposition to the defendants’ motion or in support of its cross motion for summary judgment.
Finally, Soarmar argues that LA Fitness’s March 28th Notice of Termination letter references Contract Rider Article 19 as one of the bases of its right to terminate the Contract and assume control of the Project. In fact, the Rider to the Contract has no Article 19. Soarmar concludes that this must be treated as a reference to Rider Article 20.19, which is the Contract provision that gives IA Fitness the right to terminate the Contract “for the owner’s convenience.” Not surprisingly, when a contract is terminated for convenience, the owner must pay for all work completed up to the time of termination. The termination letter, however, cannot be read as anything other than a notice that the Contract is being terminated for cause because Pinnconn breached it when it did not pay its subcontractors out of the March 4th payment from LA Fitness. The Contract clause that permits Termination for Convenience has no relevance to any issue presented by this case.
C. Soarmar’s Other Claims Against LA Fitness
Count I asserts a claim for breach of contract and Count II a claim for goods sold and delivered, which is, in effect, another species of claim for breach of a contract to pay for goods sold to a defendant. To prove a claim for breach of contract a plaintiff must establish the existence of a contractual relationship between it and the defendant. See Canney v. New England Telephone & Telegraph Co., 353 Mass. 158, 164 (1967). Soarmar has proffered no evidence of such a contractual relationship between it and LA Fitness.
Count III asserts a claim for quantum meruit and Count IV for unjust enrichment. Both of these claims seek equitable remedies that are quasi-contractual in nature. See Salamon v. Terra, 394 Mass. 857, 859 (1985), and J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 857, 859 (“Quantum meruit is a theory of recovery, not a cause of action”). It has long been established that the failure of a general contractor to pay its subcontractors does not give rise to a quasi-contractual claim by a subcontractor against the owner of the property, who contracted only with the general contractor:
. . . where a landowner has contracted to have a building erected on his land, and his contractor has employed a subcontractor to perform part of the work. On the failure of the contractor to pay the subcontractor, the latter may not recover against the landowner . . . The contracting party must look for payment to the one to whom credit was extended when the work was done, that is, the one who was expected to pay and who in fact expected to pay . .. There is no legal presumption arising from ownership that the owner of the fee is liable for [the work done on the land.)
Lachance v. Rigoli, 325 Mass. 425, 427 (1950) (internal citations and quotations omitted). See also Evans v. Multicon Constr. Corp., 30 Mass.App.Ct. 728, 740 (1991) (“In the absence of a lien perfected under G.L.c. 254, an owner who enters into a general contract for improvements on real property is not ordinarily liable to subcontractors whose sole contractual arrangements are with the general contractor”).
In the present case, Soarmar has offered no evidence that would create an exception to the general rule. LA Fitness is not liable to Soarmar for work it did on the Project where Soarmar’s only relationship to LA Fitness is as subcontractor to the general contractor for the Project.
Count v. asserts a claim for violation of Chapter 93A. Since LA Fitness had no obligation to make payment to Soarmar, it did not violate Chapter 93A when it declined to pay Soarmar the amounts owed it under its Subcontract with Pinnconn.
ORDER
For the foregoing reasons it is hereby ordered that LA Fitness's and ICW’s motion for summary judgment is ALLOWED and Soarmar’s cross motion for summary judgment is DENIED. Judgment shall enter dismissing all claims against LA Fitness and ICW.

 Under G.L.c. 254, section 14, the recording of the bond in the registry dissolves the lien (see Nat’l Lumber Co. v. United Casualty and Surety Ins. Co., 440 Mass. 723, 729 (2004)), but does “not create any rights which the claimant would not have had, or impair any defense which the obligors would have had, in an action to enforce the lien.” Stated differently, the elements of an action to recover against the bond are the same as to enforce the lien.

 The defendants also contend that the Notice of Contract was not timely filed because Soarmar had not provided labor and materials in the Project within ninety days of recording the Notice. Soarmar argues that it did and has submitted sufficient evidence of work on the Project during this ninety day period to establish a disputed issue of fact. Because of the court’s ruling on the issue raised by the quoted sentence, it need not address this ninety-day issue.