Roach, Christine M., J.
This is a commercial contract dispute involving installation of high-end glass partitions in an office condominium in downtown Boston. Plaintiff Avanti is the glass installer; the two defendants were the general contractor for the renovation project (Plattypus) and the owner of the preme-sis (Nucleus), respectively. Avanti sued for enforcement of a mechanic’s lien in the amount of $57,929. The defendants counterclaimed for breach of contract and violation of Chapter 93A. The case was tried to the bench July 26-27, 2010. Following post-trial briefing the court finds and rules as follows with respect to the claims in this action.
FINDINGS OF FACT
All of the below-enumerated Findings of Fact represent findings by the court, including but not limited to determinations of the credibility, weight, and probative value of the evidence adduced at hearing and reasonable inferences drawn from that evidence, as well as stipulations by the parties.
1. Avanti is a New York corporation, engaged in the installation of high-end glass walls, doors and partitions. This was its first job in Massachusetts. Mordaunt Trial Testimony.
2. Plattypus, LLC is a general contractor engaged in both residential and commercial renovation, with a principal place of business in Canton, Massachusetts. Nucleus, also a Massachusetts limited liability company with a principal place of business in Wellesley, Massachusetts, is the owner of the commercial premises at issue. Nucleus hired Plattypus to complete the in-process renovation of an office condominium at 100 State Street, Unit 10, Boston, in about April 2008 which had been begun by another contractor. Platt Trial Testimony; Campbell Trial Testimony.
3. A portion of the renovation designed by Nucleus’ architect included the manufacture and installation of glass partitions. The defendants found Avanti as a potential vendor for the glass through Avanti’s internet web site. Platt Trial Testimony; Campbell Trial Testimony.
4. Nucleus authorized Plattypus to contract with Avanti to deliver and install the glass at the premises. The contract price was $54,000. The contract terms and price are memorialized in a series of emails between Plattypus and Avanti dated May 30, 2008 through June 20, 2008. Platt Trial Testimony; Mordaunt Trial Testimony; Trial Exhibits 1-4, and 11.
5. Plattypus provided one-third of the contract price, or $16,200, to Avanti as an initial deposit on June 26, 2008. Trial Exhibit 5; Trial Exhibit 8 at page 9.
6. Glass was ultimately delivered to the premises in ■three stages, on August 26, 2008, September 6, 2008, and on some later date in September. Platt Trial Testimony; Mordaunt Trial Testimony.
7. Prior to the first delivery on August 26, 2008, a dispute arose among the three parties regarding responsibility for the cost of renting and staffing a crane to deliver glass to the tenth floor of the building, and to prepare the premises for the crane. The premises elevators were not large enough to carry the glass, but no one from Avanti had inspected the elevators prior to setting the contract price. Avanti’s experience had been that it was industry practice for the customer to be responsible for access to the premises for the glass, usually by freight elevator. Platt Trial Testimony; Mordaunt Trial Testimony; Trial Exhibit 7.
8. Nucleus ultimately paid $3,000.00 towards these August 24, 2008 costs, and Plattypus paid $1,901.24. Platt Trial Testimony; Trial Exhibit 12.
9. Portions of the glass (including larger sliding panes) delivered on August 24, 2008 were mis-mea-sured and mis-cut by the manufacturer (not Avanti); the glass was backwards from the proper configuration required for installation. This mistake required reordering and re-delivering replacement glass. Platt Trial Testimony; Mordaunt Trial Testimony.
10. Nonetheless, Plattypus paid Avanti a second installment due on the contract, of $16,500, on August 24, 2008. Trial Exhibit 11.
11. Avanti and Plattypus again negotiated, but disagreed about, the cost of re-craning the re-delivered glass on September 6, 2008. Plattypus arranged for the crane and ultimately bore the cost, as Avanti and Nucleus declined to do so. The crane rental was $1,512. Plattypus principal Kevin Platt estimates Plattypus’ additional costs (preparing the premises and paying workers) to have been roughly $1,500. Platt Trial Testimony; Mordaunt Trial Testimony; Campbell Trial Testimony; Trial Exhibit 13.
12. Avanti and Plattypus also disagreed about the most economical method and who should bear responsibility for disposing of the mis-cut glass. Plattypus ultimately disposed of the glass, for a cost to it of $500. Platt Trial Testimony; Mordaunt Trial Testimony; Trial Exhibit 8 at pages 2, 5-9.
13. There was a third delivery date in mid- to late-September to replace some additional panes of glass, which were smaller and were successfully transported in the building elevator. Mordaunt Trial Testimony; Schindler Trial Testimony.
14. Following the final installation Nucleus notified Plattypus of the following defects: A “hair” scratch in the door to Nucleus’ principal (Campbell’s) office, at approximately eye level and approximately six inches long; one chip on each of two main glass partitions at the edge where they meet; incorrectly aligned rails (door guides); and two missing door stops for swinging office doors. Platt Trial Testimony; Campbell Trial Testimony; Schindler Trial Testimony.
*136 15. The first record documentation of notice to Avanti by Plattypus of these issues is on September 26, 2008. Mordaunt Trial Testimony; Trial Exhibit 8, at page 3.
16. Despite his lack of experience with high-end glass, Platt undertook to develop a “very loose” estimate of the cost to accomplish the repairs. Platt’s estimate is $10,230. Nucleus withheld this amount from its payments to Plattypus. Platt Trial Testimony. Mordaunt believed this estimate was “high.” At trial Avanti estimated the cost of repairs to be $2,000. Mordaunt Trial Testimony.
17. Avanti declined to come back to Boston to make the repairs unless Plattypus “brought his payments up to date,” by which Avanti was referring to the third, post-delivery, payment under the contract of $16,200. Mordaunt Trial Testimony; Trial Exhibit 11.
18. The parties engaged in a series of vituperative emails regarding the defective installation, the possibility of repairs, and the amounts due under the contract. Avanti claimed it wanted to finish the job and get paid. Plattypus and Nucleus offered to escrow funds, but declined to pay Avanti until the repairs were made, and continued to seek reimbursement of costs for the second crane delivery. Nucleus informed Plattypus that it wanted Avanti, not another contractor, to repair the work, and at the time of trial the work had not been repaired. Campbell Trial Testimony; Trial Exhibit 8 at pages 2-5; Trial Exhibit 14.
19. Notwithstanding the ongoing dispute, Plattypus paid Avanti an additional $5,000 on October 6, 2008, and $3,929 on November 10, 2008. However, the $3,929 check was never cashed by Avanti and was ultimately cancelled by Plattypus, for a total of $37,700 paid—and $16,300 owed—on the $54,000 contract. Platt Trial Testimony; Trial Exhibits 10 and 22.
20. On October 27, 2008, Avanti filed a notice of mechanic’s lien at the Suffolk Registry of Deeds against the Premises at 100 State Street, stating that Avanti was owed $41,629 on the contract. No payment was listed on the Statement of Account. Trial Exhibit 15.
21. On November 12, 2008 Avanti recorded an Amended Statement of Account at the Registry stating Plattyypus owed Avanti $57,929, on a contract price of $95,629. Trial Exhibits 16-17.
22. There is not, nor has there ever been, documentation for an agreed-upon contract price of $95,629. Avanti unilaterally announced this amount to Plattypus and Nucleus during email exchanges about the repairs sought by Platlypus and Nucleus. Gordon Trial Testmony; Mordaunt Trial Testimony; Platt Trial Testimony; Trial Exhibit 22.
23. Avanti’s explanation for demanding this new amount was that it had allowed Plattypus “discretionary discounts” at the beginning of the contract, which were reflected in Avanti’s bid on the job. Those discounts were purportedly reversed as a result of the loss of good will Avanti would now suffer because of Platlypus’ dissatisfaction with the job. Avanti’s principal Matthew Gordon testified part of the discount was based on not having to go through a general contractor for the work, and that this arrangement was “verbally implied,” although he could not say when that had occurred. Gordon Trial Testimony; Mordaunt Trial Testimony; Trial Exhibit 8 at page 4.
24. On December 14, 2008, Avanti demanded $92,000 in lieu of filing a lawsuit and foreclosing on its Notice of Lien. Platt Trial Testimony; Campbell Trial Testimony; Gordon Trial Testimony; Trial Exhibit 21.
25. Avanti filed this suit against both Nucleus and Platlypus in January 2009 for $57,929. Docket, at Paper 1.
26. Avanti did not remove the lien against the property owned by Nucleus at 100 State Street until March 6, 2009, ten days prior to a scheduled court hearing on the issue. Shortly thereafter, Avanti did not oppose Nucleus’ motion to dismiss Avanti’s claims against Nucleus in this matter. Campbell Trial Testimony; Trial Exhibit 18; Docket at Paper 9.
27. On April 28, 2010 this case was scheduled by the court for trial on July 26, 2010. On June 2, 2010, Avanti filed a new and substantially identical action in New York against both Nucleus and Plattypus, claiming damages of $57,929, based on the undocumented contract amount of $95,629. Trial Exhibit 23.
28. At trial before me Avanti claimed as damages only the final $16,300 contract price payment not made by Plattypus. Gordon Trial Testimony.
29. Plattypus’ counterclaim for damages or setoff is as follows: $10,230 for repairs of the glass job; $3500 for the expenses of the second crane delivery and glass disposal; and $5,000 in attorneys fees. Plattypus has offered no admissible evidence of its fees. Platt Trial Testimony.
30. Nucleus’s counterclaim for damages proximately caused by Avanti is as follows: technical default on its line of credit with its lender (although Nucleus did not pay the $2,500 fee because it chose for other reasons not to renew the LOC); legal fees and costs in the amount of $10,369.10; and the “mild distraction” and lost time of its principals’ having to deal with the issue. Campbell Trial Testimony; Affidavit of Herbert W. Cooper.
Legal Standards Contract
1. A contract exists when the parties agree to terms and conditions of mutual promises. A contract may be based upon oral or written promises, often referred to as a meeting of the minds. Mutuality means that the parties communicated their agreement to the terms and conditions in the same sense and at the same time. Unexpressed intent is not a meeting of the *137 minds. Canney v. New England Tel. & Tel., 353 Mass. 158, 164 (1967).
2. Every contract in Massachusetts contains an implied covenant of good faith and fair dealing. The covenant means that no party may do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. The scope of this term is as broad as the contract that governs the particular relationship. If a party breaches the covenant, it cannot recover for subsequent breach by the other, nor may it obtain relief based on the effects of its own breach. However, recovery by the wronged party for breach of the covenant requires a specific showing of economic loss. Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004); Hawthorne’s, Inc. v. Warrenton Realty, Inc., 414 Mass. 200, 210-11 (1993); Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471-74 (1991); Ayash v. Dan-Farber Cancer Inst., 443 Mass. 367, 385-88 (2005).
Mechanic’s Lien
3. One of the primary purposes of the mechanic’s lien statute, G.L.c. 254, is “to provide security to contractors, subcontractors, laborers, and suppliers for the value of their services and goods provided for improving the owner’s real estate.” National Lumber Co. v. LeFrancois Constr. Corp., 430 Mass. 663, 668 (2000), quoting Hammill-McCormick Assocs., Inc. v. New England Tel. & Tel. Co., 399 Mass. 541, 542-43 (1987). A party seeking to enforce a mechanic’s lien must strictly comply with the statute’s terms, Ng Bros. Constr., 436 Mass. 638, 644 (2002), because the filing and notice requirements “protect the owner and others with an interest in the property.” Hammill-McCormick Assocs., 399 Mass. at 543.
Chapter 93A
4. Neither a breach of contract nor a negligent act standing alone constitutes proof of an unfair or deceptive act or practice. Rather, a claimant has the burden to prove, by a preponderance of the evidence, that the negligence or breach was or resulted in an unfair or deceptive act or practice. Squeri v. McCarrick, 32 Mass.App.Ct. 203, 207 (1992) (mere negligence); Madan v. Royal Indem. Co., 26 Mass.App.Ct. 756, 762 (1989) (breach of contract). While a breach of contract in and of itself is not sufficient, conduct undertaken as leverage to destroy the rights of another party to the agreement carries the key coercive, and thus unfair, quality. Massachusetts Employers Ins. Exchange v. Propac-Mass., Inc., 420 Mass. 39, 42-43 (1995) (unilateral self-serving conduct not fair dealing in good faith); Anthony’s Pier Four, 411 Mass. at 474-76 (use of discretionary contract right as wedge to force concessions unfair and a statutory violation).
5. The existence of unfairness for purposes of the statute must be determined from all of the circumstances of each case. The fact finder may consider whether the challenged acts fall within some established concept of unfairness, whether the defendants’ act or practice was immoral, unethical, oppressive, unscrupulous or otherwise unconscionable, and/or whether the acts or practices would cause substantial injury to the public or to consumers in general. Legality of the underlying conduct is not necessarily a defense to a statutory claim. Kattar v. Demoulas, 433 Mass. 1, 13 (2000); Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 778 (1986); Green v. Blue Cross & Blue Shield of Mass., Inc., 47 Mass.App.Ct. 443, 447 (1999). A party to a business contract is in violation of Chapter 93A when it attempts to extort from its counterparties monies that it cannot, in good faith, believe are due. Cf. Zabin v. Piccioto, 73 Mass.App.Ct. 141, 169-70 (2008).
6. Even though particular injury may have been caused by a particular act, the law treats the injury as being compensable only if the injury was reasonably foreseeable or, said another way, only if the injury was a reasonably expected result of the act. There must be a causal connection between the seller’s deception or unfairness and the buyer’s loss. In a Section 11 case, the plaintiff is required to establish that it suffered actual harm from the loss of money or property, including for purposes of recovering multiple damages. Leardi v. Brown, 394 Mass. 151, 162 (1985); Halper v. Demeter, 34 Mass.App.Ct. 299, 303-04 and note 9 (1993).
7. Attorneys fees may qualify as actual damages pursuant to Chapter 93A. Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 430 Mass. 60, 63 (1999) (submitting unreasonable or unnecessary medical bills and attempting to collect that amount unfair; litigation expenses in defense of that claim are proximate harm); Tech Plus v. Ansel 59 Mass.App.Ct. 12, 20-21 (2003) (claimant must show it was forced to incur legal expenses to defend against litigation initiated in violation of the statute).
8. To meet the willful or knowing components of the statute for purposes of multiple damages, a plaintiff has the burden of proving a defendant held a subjectively culpable state of mind, which requires more than mere negligence. It contemplates a more purposeful level of culpability, that is, a conscious disregard for the likely results, and the intentional employment of sharp practices. This standard is met where the defendant has acted recklessly. Kattar, 433 Mass. at 16; Gore v. Arbella Mut. Ins. Co., 77 Mass.App.Ct. 518, 532-33 and note 14 (2010).
9. The decision to double or treble damages is to be based on the degree of the defendant’s culpability. Kattar, 433 Mass. at 16; International Fidelity Ins. Co. v. Wilson, 387 Mass. 841, 853 (1983).
RULINGS
1. Plattypus did not breach its contract with Avanti. Plattypus was justified in withholding, and offering to *138 escrow, approximately $12,000, representing the balance of its final payment on the contract following delivery. The withholding of this sum was reasonable pending good faith efforts by Avanti to return to Boston to repair the damaged glass installation and further negotiations with respect to setoffs.
2. Platlypus and Avanti did not agree on who would be responsible for the second crane operation; nor did they agree on the manner and cost for disposing of the damaged glass. However, because the second delivery and disposal were both necessitated by Avanti’s manufacturer’s error, and because by September 2008 Avanti well knew of the building’s limitations, it was Avanti’s duty and responsibility either to pay for the second delivery and disposal itself, or to renegotiate the contract price. It was not Plattypus’ responsibility to absorb those approximately $3500 in costs.
3. Avanti was responsible for the necessary repairs to the glass as installed. If Avanti chose not to make those repairs itself, Avanti owed Plattypus the reasonable value of those repairs as a setoff from the contract price. Plattypus’ “loose” estimate of $10,230 required to make the repairs has no basis in evidentiary support, and bears no resemblance to the relatively minor work described. I find this estimate to be an inflated figure fueled in part by Platt’s lack of familiarity with the glass, and in part by his frustrations with Avanti. Given the disparity in experience between Plattypus and Avanti with this type of glass, I credit Avanti’s estimate that in 2008 it would have cost $2,000 to repair the minimal damage reported, and thus successfully to complete the job.
4. All other things being equal, Plattypus would owe Avanti $10,800 under the contract—the balance due of $16,300, minus $5,500 in setoffs for the crane, the glass disposal, and the repairs.
5. However, all other things are not equal. Avanti had no legal basis for demanding the higher contract amount from Plattypus, or for suing Plattypus for $57,929, yet nonetheless did so, not once but twice, in Massachusetts and in New York. These actions beginning in September 2008 constituted a breach by Avanti of its contractual duly to Plattypus of good faith and fair dealing. As a result of Avanti’s breach Plattypus no longer owed contract performance to Avanti, and Avanti must forfeit the $10,800 to which it might otherwise be entitled.
6. Plattypus has suffered no contract damages as a result of Avanti’s breach of the covenant of good faith and fair dealing, because the amount Plattypus withheld from Avanti exceeds the setoff amounts I find Plattypus was entitled to.
7. Avanti had no legal basis for suing Nucleus for any amount, yet nonetheless did so, not once but twice.
8. Avanti filed two false mechanic’s liens, knowing them to be false. At most before any setoffs were granted Avanti was owed the unpaid balance on the contract of $16,300.
9. The actions of Avanti in: 1) declining Platlypus’ reasonable escrow offer and refusing to return to repair the work; 2) arbitrarily and unilaterally purporting to re-write the contract with Platlypus for $95,629 instead of $54,000; 3) filing two false mechanic’s liens based on that arbitrary and false number; and 4) suing both Plattypus and Nucleus twice, also based on that arbitrary and false number, each constitute knowing and willful violations of Chapter 93A, Section 11. The counterclaim plaintiffs are entitled to treble their actual damages proximately caused by these violations, which I find and rule were the type of willful, knowing, and quintessential efforts at economic coercion among businesspeople which have long been banned in this Commonwealth.
10. Plattypus suffered no compensable economic damage as a proximate result of Avanti’s statutory violations, and is therefore entitled to nominal damages of $25 only on its Chapter 93A counterclaim.[1]
11. Nucleus suffered no damage in its business relationship with its bank proximately caused by the actions of Avanti, and the mild distraction suffered by Nucleus in its dealings with Avanti is not compensable as economic damage under the statute.
12. Nucleus is entitled to treble the amount of its actual loss of money or property proximately caused by Avanti’s statutory violations, represented by the properly itemized and documented attorneys fees and costs submitted at time of trial in the amount of $10,369.10. Docket, at Paper 22.
Conclusion
For all of the reasons stated here, judgment shall enter as follows:
On Avanti’s claim against Plattypus, judgment in favor of Plattypus;
On Plattypus’ counterclaim against Avanti, judgment in favor of Plattypus in the nominal amount of $25.00 only; and
On Nucleus’ counterclaim against Avanti Judgment in favor of Nucleus in the amount of $10,369.10, to be trebled.

Plattypus has offered no evidentiary support for its claim of attorneys fees, and thus the court cannot find fees as an element of Chapter 93A damages to Plattypus. Should Plattypus seek to claim attorneys fees as a separate element of relief under the statute, based on the court’s finding of violation, it must file the appropriately documented and detailed petition within thirty days of receipt of this order.